USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/26/2026

**MEMORANDUM ENDORSEMENT**
7:18-cv-00631 (NSR) (AEK)
Williams v. Annucci

  The Court has received several filings from *pro se* Petitioner seeking various forms of relief, including: (1) a motion to stay his pending petition for a Writ of *Habeas Corpus*; (2) a letter motion requesting permission to reply to Respondent's anticipated opposition to the motion to stay; (3) a letter motion seeking to file a reply to Respondent's opposition to Petitioner's objection to Magistrate Judge Andrew Krause's Report and Recommendation ("R&R"); and (4) a letter motion requesting oral argument on Petitioner's motion to stay and *habeas* petition. (*See* ECF Nos. 28–34.) The Court will address each in turn.

  *First*, Petitioner filed a motion to stay his *habeas* petition. (ECF No. 28.) Petitioner asserts, among other things, that he had ineffective counsel during his state court proceedings. (*See generally* ECF No. 29.) Plaintiff further argues that unless his *habeas* action is stayed, he will be unable to return to state court to exhaust the arguments he now seeks to pursue. (*Id.*) However, the time to raise such arguments—at least in this action—has passed. Moreover, Plaintiff's arguments in his motion to stay should be raised in his objections to the R&R, not in a separate motion to stay. Nevertheless, as noted in the R&R, many of Plaintiff's arguments appear to "involve purely state law questions" which do not provide "a basis for *habeas* relief." (ECF No. 25 at 30.) The Court consequently (1) DENIES Plaintiff's motion to stay and will consider such arguments in Plaintiff's objections to the R&R, if they are properly raised; (2) DENIES Plaintiff's request to file a reply to an anticipated opposition to his motion to stay because the issue is now moot; and (3) DENIES Plaintiff's request for an oral argument because the issue is similarly moot.

  *Second*, Petitioner seeks to file a reply to Respondent's opposition to the R&R. (ECF Nos. 32–33.) Respondent is directed to inform the Court whether he intends to file an opposition. If Respondent chooses to file an opposition, Petitioner is permitted to file a reply, which will be due two weeks after such opposition papers are served.

  *Third*, Petitioner seeks to conduct oral argument, via video conference, regarding the objections to the R&R. (ECF Nos. 32–33.) At this time, however, the Court DENIES Petitioner's request. If the Court determines that oral argument is necessary after reviewing all submitted motion papers, it will inform the parties to schedule a hearing.

  The Clerk of Court is kindly directed to terminate the motion at ECF No. 28. The Clerk of Court is also kindly directed to mail this Endorsement to *pro se* Petitioner at the address listed on ECF, and to show service on the docket.

Dated: January 26, 2026
  White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

RECEIVED
SDNY DOCKET UNIT

2026 JAN 20  PM 3:27

To: Court Clerk, SDNY

Re: 18-cv-631 (NSR) (AEK)

Dear Madam or Sir,

Hello, I have enclosed the following for filing:

1. Objections to Hon. Judge Krause's Report and Recommendation.

2. Exhibits ___ 1 0 ___

3. Memorandum of Law. *Included in objections.*

4. Affirmation of Service.

I have a stay motion pending. But I am filing timely Objections to the R & R, in case my stay is not granted. I kindly ask that you please file the above, and please let me know if I will be granted oral argument, via video conference, to further discuss my Objections. Thanks for your time and consideration. Have a nice day!

Yours Truly

Jaerue Williams # 13-A-5021
Shawangunk CF
P O box 700
Wallkill NY 12589

cc: NYS Attorney General

*1-7-2016*
*Date*

1 of 1



RECEIVED
JAN 20 2026
U.S.D.C.
W.P



Jaerve U...

#13-A-502...

shawangunk CF

P O box 700

Wallkill NY 12589

SHAWANGUNK ☆ CORRECTIONAL FACILITY

NEOPOST
01/14/2026
US POSTAGE $004.44°

FIRST CLASS MAIL
IMI

ZIP 12589
041M11285312

court clerk

federal court SDNY

300 Quarropas street

White plains NY 10601

Legal mail

RECEIVED
JAN 2 0 2026
U.S.D.C.
W.P.

# 13-A-5021

Legal
mail

Case 7:18-cv-00631-NSR-AEK   Document 35   Filed 01/26/26   Page 4 of 19

RECEIVED
SDNY DOCKET UNIT

2026 JAN 20  PM 3: 27

To: Court Clerk, SDNY

Re: Information

Dear Madam or Sir,

Hello I have a stay motion pending. I am also sending you Objections for the R & R. But I am in need of some clarification. I am receiving some help from a Law Clerk that works in the Law Library, but I want to make sure that I am doing everything the right way.

1. Will I be able to file a Reply to the Respondent's Opposition to my motion requesting a stay?

2. Will I be able to file a Reply to Respondent's Opposition to the Objections of the R & R that I filed?

3. I wish to alert the court that I am requesting permission to exercise all of my rights. I would like to file a Reply to both motions. I also would like to present oral argument via video conference.

I greatly look forward to your help with obtaining the above info. Thanks for your time. Have a nice day!

Respectfully Submitted

Jaerue Williams # 13-A-5021
Shawangunk CF
P O box 700
Wallkill NY 12589

Date 1-9-2026

1 of 1

RECEIVED
SDNY DOCKET

2026 JAN 12 PY 3 15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAERUE WILLIAMS,
Petitioner

against

ANTHONY J. ANNUCCI,
Respondent

---

18-cv-631
(NSR) (AEK)

MEMORANDUM OF LAW

Petitioner (hereinafter "Williams") submits this Memorandum of Law in support of his motion for a stay and abeyance.

### POINT I
### GROUNDS FOR GRANTING STAY EXIST

1. In Rhines v. Weber, 125 S.Ct. 1528 [3-30-2005] "The Supreme Court, Justice O'Connor, held that the district court had discretion to stay a mixed habeas petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." Also in Rhines "District courts do ordinarily have authority to issue stays, see Landis v. North American Co., 299 U.S. 248, 254 (1936), where such a stay would be a proper exercise of discretion, see Clinton v. Jones, 520 U.S. 681, 706 (1997)." On page 22 of the Hon. Judge Krause's Report and Recommendation (hereinafter "R & R"), dated 11-26-2025. It states "In this case, only two of the claims in the Petition were raised in Petitioner's leave application filed with the New York Court of Appeals". Also on page 22 "The remaining claims in the Petition-grounds

1 of 11

two through six, see Petition Brief at 20-29; Background Section II.B, Supra-were not included in Petitioner's leave application, and must therefore be deemed exhausted but procedurally defaulted. As stated above, the only way for Petitioner to overcome the procedural default and enable these claims to be considered on habeas review is for him to demonstrate either (i) cause for default and prejudice therefrom, or (ii) that failure to consider the claims will result in a fundamental miscarriage of justice, i.e., that he is actually innocent. Petitioner has failed to do either." On page 23 the R & R further states: "Petitioner tries to set aside the procedural default by arguing that the failure to include these claims in his application for leave to appeal was the fault of his appellate counsel. In his reply brief, Petitioner asserts that his appellate counsel was ineffective 'because she never consulted me or discussed anything with me regarding the filing of the appellate brief to the New York Court of Appeals.' ECF No. 12 at 2. Furthermore, Petitioner maintains that 'when his counsel submitted the brief, she did not include the arguments that he wanted to be included in the appellate brief to the New York Court of Appeals.' According to Petitioner, these failures by his appellate counsel 'should be seen as good cause for excusing the procedural default.' But while ineffective assistance of appellate counsel may constitute cause for a procedural default, 'the exhaustion

2 of 11

doctrine, which is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' Murray, 477 U.S. at 488-89; see Smith, 411 F.3d at 347 n.6 ('Even if Smith had argued to us that his appellate counsel caused the default, we could not consider it because he has not brought a claim in state court that his counsel in the state appellate proceeding was ineffective.') Petitioner has never raised an effective assistance of appellate counsel claim in state court. Therefore, he cannot use such a claim to establish cause for his procedural default."

2. Exhibit 1 is an e-mail thread (May of 2018) between Williams' appellate lawyer (Christine Moccia) and his sister. This message led Williams to believe that all of the claims (raised in Appellate Division and Court of Appeals) would be properly exhausted for federal habeas review. Williams followed his lawyer's advice and wrote the Court of Appeals, to ensure that all of his claims were properly preserved, but did not get a response. Most likely because Williams was denied leave on 11-22-2016, and he was writing the Court of Appeals 18 months later. Williams was not worried because around that time (2018), a Law Clerk also showed Williams the

Supreme Court decision Martinez v. Ryan, 132 S.Ct 1309 [3-20-2012], which states "Where, under state law, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas corpus court from hearing those claims if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Also in Martinez "An attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the state is ineffective, the prisoner has been denied fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claim. Without adequate representation in an initial-review collateral proceeding, a prisoner will have similar difficulties vindicating a substantial ineffective-assistance-at-trial claim." In New York State a conviction becomes final 90 days after leave to appeal is denied by the Court of Appeals (see CPL 460.20). Therefore Ms. Moccia was representing Williams, up until his conviction became final. Her conduct deemed her representation ineffective, because her failure to properly raise strong issues, has Williams in this awkward predicament now (in which he must do more work to prove that his claims were properly exhausted, or seek a stay to properly exhaust to allow this court the ability to review said issues). In Martinez "a

4 of 11

prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the intitial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984)". In Exhibit 1 Ms. Moccia advised Williams (via his sister, in an e-mail) to write the Court of Appeals, in an attempt to rectify her mistakes, while also making it seem like Williams should not have any problem when he files his habeas corpus. But there is no procedure that allows Williams (a convicted felon) to supplement the leave application that was filed by his assigned lawyer, 18 months after being denied leave.

3. The Southern District of New York, and EDNY granted multiple federal habeas Petitioners a stay, to allow them to exhaust state remedies (see Diaz v. Kopp, 146 F.4th 301 [2nd Cir. 7-30-2025]). In Daum v. Eckert, 2021 WL 4057190 [2nd Cir. 9-8-2021] "Daum was convicted of eight counts of robbery in 1997 in state court and filed a successive petition for habeas corpus in the district court in 2017. The petition was stayed pending resolution of Daum's habeas corpus proceedings in state court." In Walden v. Walcott, 2025 WL 2145652 [SDNY 7-29-2025] "Respondent filed a motion to dismiss the petition as

unexhausted. (Mot. to Dismiss the Habeas Pet, ECF No. 24.) Magistrate Judge Netburn stayed the case until May 24, 2021, allowing the Petitioner to pursue any unexhausted claims in state court. (Stay & Abeyance Order, ECF No. 48.) On November 22, 2021, Magistrate Judge Netburn lifted the stay. (Order, ECF No. 60.)" In Mayrant v. Wlocott, 2025 WL 2106654 [SDNY 7-28-2025] "Because Petitioner had exhausted his state remedies, Magistrate Judge Moses lifted the stay on the original habeas corpus petition." In Jackson v. Capra, 2023 WL 6533492 [SDNY 10-6-2023] "Before Respondent's answer was due, Petitioner filed a second stay request because a motion for reargument was still pending. ECF No. 30. The Court granted that request." The cited decisions show that this jurisdiction has recently granted multiple Petitioners a brief stay. In Rhines "the District Court issued a stay 'conditioned upon petitioner commencing state court exhaustion proceedings within sixty days of this order and returning to this court within sixty days of completing such exhaustion." In Parsley v. Lamanna, 2023 WL 5512311 [SDNY 5-2-2023] "On October 11, 2019, I stayed the instant petition 'pending final resolution of the pending state court action (including any available appellate review)' and directed petitioner to move to lift the stay within thirty days of the resolution of his second writ of error coram nobis." Williams is asking this court for the same courtesy that the aforementioned Petitioners received. In Thomas v.

6 of 11

Kirkpatrick, 2018 WL 11693241 "Because Petitioner's motion to amend is denied, his request for a stay is denied as moot. Stay and abeyance is appropriate where it permits a petitioner to exhaust his claims in state court because 'federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims.' Rhines v. Weber, 544 U.S. 269, 273 (2005). The claims Petitioner seeks to exhaust, however, are not currently in the petition, nor can the petition be amended to contain them, given that they are barred by the statute of limitations." Williams does not have that issue. The claims that Williams seeks to exhaust are already in his timely filed petition. The problem is his assigned appellate lawyer provided him with ineffective assistance and misguided him in to believing that they were properly exhausted. If Williams knew that they were not properly exhausted, he would have already filed a coram nobis. But he did not know until Hon. Judge Krause filed the R & R. Therefore Williams has demonstrated "good cause" because of Ms. Moccia's ineffective assistance. In Strickland "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Also in Strickland

7 of 11

"The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. See United States v. Frady, 456 U.S. 152, 162-169 (1982); Engle v. Isaac, 456 U.S. 107, 126-129 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceeding whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, see id., at 126, 102 S.Ct., at 1570, no special standards ought to apply to ineffectiveness claims made in habeas proceedings." Therefore Ms. Moccia violated Williams' 5th, 6th, and 14th amendment rights by failing to preserve strong issues. Williams was clearly prejudiced by these failures, because the R & R informed Williams that he will not have these claims reviewed, unless he goes back to the state court to properly exhaust.

POINT II
CLAIMS HAVE MERIT

4. Williams raised ground (2) "the trial court erroneously denied Petitioner's motion to dismiss the case because the People failed to prove the element of intent; (3) the evidence was legally insufficient to support the conviction." These

grounds are extremely important, because if either one is granted, Williams has a strong chance of getting his indictment dismissed and avoiding another trial. These grounds are basically the same as claiming "actual innocence" without using that specific language. The People do not have any physical evidence that proves, or even suggests that Williams was the actual shooter, because he was not. The strongest evidence that the People introduced at trial, was an alleged eyewitness. This witness ("Aguirre") testified at an identification hearing, and stated: "I'll be honest, all black dudes they look the same; most of them. So it was kind of hard for me." (Please see Exhibit 2 [pages 119 and 120]). Aguirre was asked "Do you see him in the court today? Look around and see if you see him in court today?" Aguirre's answer was "No." The Prosecutor asked "You don't see him right now?" And again Aguirre stated "No." This testimonial evidence was not legally sufficient to identify Williams as the shooter, or as being at the crime scene. Therefore it was not legally sufficient to prove the element of Murder (which was dismissed after a hung jury), or any level of homicide. Yet somehow, Williams was convicted of manslaughter in the first degree. No gun was found, and there was no gunshot residue on Williams' clothes, or body, neither was there any in his car. Therefore allowing these claims to go without review, would be a severe miscarriage of justice. Ground seven also needs to be exhausted in state court.

9 of 11

POINT III
LESSER PLEADING STANDARD

5. Williams is an incarcerated Pro Se litigant. Williams does not have the amenities that a person enjoying freedom has (internet, A.I programs, word processor, etc.) he must share prison Law Library resources, or ask a Law Clerk to assist with drafting motions on a typewriter. Williams has limited access to the Law Library. Williams should not be held to the standard of a person that is living in the free world, and definitely can not be held responsible for his appellate lawyer's failure. Williams drafted his Petition as best as he could at that time, trying to make his claims as clear as possible. In United States v. Sineneng-Smith, 140 S.Ct. 1575 [5-7-2020] "In criminal cases, departures from the party presentation principle have usually occurred 'to protect a pro se litigant's rights.' Id, at 244, see e.g., Castro v. United States, 540 U.S. 375, 381-383 (2003) (affirming courts' authority to recast pro se litigants' motions to 'avoid an unnecessary dismissal' or 'inappropriately stringent application of formal labeling requirements, or to create a better correspondence between the substance of a pro se motion's claim and its underlying basis.' And in Federal Exp. Corp. v. Holowecki, 552 U.S. 389 [2-27-2008] "Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties. See Estelle v.

Gamble, 429 U.S. 97 (1976) (Pro se pleadings are to be 'liberally construed')." The whole objective of a R & R is to give a Petitioner the opportunity to clarify their claims, and/or rectify errors in the Petition, before a final decision is made. Williams' appellate lawyer clearly made prejudicial errors, that will prevent this court from reviewing strong issues, unless a stay and abeyance is granted.

CONCLUSION

6. Williams has a loyal and loving wife, that wants her husband home to enjoy a life with his family. Williams also has a young son (toddler) that deserves to be raised by his father. Williams is asking this court to take all of the above cited facts in to consideration, and allow him to be granted a stay. So he can properly exhaust claims that are clearly worthy of being reviewed by this court.

WHEREFORE Petitioner prays that he is granted a stay and abeyance.

Respectfully Submitted

X _Jaerue Williams_  1-5-2026

Jaerue Williams

**⋀ Gmail**

Jordan Galloway <jordantckgalloway@gmail.com>

## on behalf of Jaerue Williams
20 messages

*Exhibit 1*

---

**Jordan Galloway** <jordantckgalloway@gmail.com>                    Mon, May 21, 2018 at 10:14 PM
To: cmoccialaw@gmail.com

Hello, I am Mr. Williams' sister. Attached are two letters that my brother sent to your Chappaqua address, but we realized tonight, May 21, that you have changed your address so we decided to email them to you due to the limited time Jaerue has. Ms. Moccia, we ask please for your help, it would be highly appreciated. Thank you so much for your time in advance and we are hoping to hear from you soon. God bless.

**2 attachments**

 **ms moccia 1.docx**
65K

 **ms moccia 2.docx**
65K

---

**Christine Moccia** <cmoccialaw@gmail.com>        *1st defense*        Tue, May 22, 2018 at 7:10 AM
To: Jordan Galloway <jordantckgalloway@gmail.com>

Ms. Galloway:

I received the letters from Mr. Williams, but I cannot consent to an affidavit.

From what I understand, my letter application to the COA did not include exact same arguments that were raised in the direct appeal to the appellate division?
My suggestion, therefore, is that Mr. Williams send a letter to the COA raising those issues that were missing from my letter application the COA. Therefore, when the COA rejects those issues he will have exhausted his remedies and presumably will be in a better position to file the federal case.

 This situation has never come up before in the many appeals I have done. If Mr. Williams has case law or statutory law to support this, I would appreciate if he would send that to me. Has he attempted to file the federal habeas corpus case and been rejected? I would like to see that as well.

Also, please bear in mind that I do not see clients at the Rye Brook office unless by appointment.

Thank you.

Regards,

Christine Moccia
Attorney at Law
800 Westchester Avenue Ste. N-307
Rye Brook, New York 10573
Phone: (914) 902 - 3325
Fax: (914) 801-5687

*Please consider the environment before printing this e-mail.*

**IMPORTANT NOTICE:** This e-mail, including any attachments, may be confidential, privileged or otherwise legally protected. It is intended only for the addressee. If you received this e-mail in error or from someone who was not authorized to send it to you, do not disseminate, copy or otherwise use this e-mail or its attachments. Please notify the sender immediately by reply e-mail and delete the e-mail from your system.

On Mon, May 21, 2018 at 10:14 PM, Jordan Galloway <jordantckgalloway@gmail.com> wrote:

Exhibit 2

S. Aguirre - People - Direct

119

A      I picked -- I saw in the picture, and I saw.  I can see his face in those pictures.

Q      And did you tell the police that?

A      Uh-huh.

Q      Yes or no?

A      Yes.  I circled.  I put my initials.

Q      Okay.  Did the police tell you who to pick out?

A      No.  They just show me a lineup of six guys.

Q      And what did they ask you?

A      Just they tell me watch close.  Make sure.  You know, don't press yourself.  Take your time.  So, I was looking around one by one, and I see that guy, and I pick it.  And they say put your initials who the guy is.

Q      And you did that?

A      Because for me, I'll be honest, all black dudes they look the same; most of them.  So it was kind of hard for me.

Q      And when you saw him, did you think he looked the same as everybody else?

A      No.  When I put the details, you know.

Q      When you looked at the pictures that the police showed you, were you looking for the person?

                MR. MC CLURE:  Objection.

                MS. CORNACHIO:  Can I finish?

                THE COURT:  Overruled.

EXhibit 2

Q    Were you looking for the person that Pee Wee showed you, or were you looking for the person that you saw shoot?

MR. MC CLURE:  Objection.

THE COURT:  Overruled.

THE WITNESS:  The guy I see that night.  I didn't even think about Pee Wee's picture at that time.

Q    Okay.  And how sure are you that the person in the picture that you picked out for the police is the person you saw shooting?

A    90 percent.

Q    I'm sorry?

A    90 percent.  Like I know that I can recognize him.

Q    Do you see him in court today?  Look around and see if you see him in court today?

A    No.

Q    You don't see him right now?

A    No.

Q    What are you doing, Sergio?

A    I'm watching.  Just, I need to be more close.  I don't have my glasses right now.

Q    Okay.  So, were you wearing your glasses then?

A    What?

slg